**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(GREENBELT DIVISION)**

| | | |
|---|---|---|
| NAAB CONSULTING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No._____ |
| | ) | |
| MCQUADE BRENNAN LLP and | ) | |
| BRIAN MCQUADE, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Naab Consulting, Inc. d/b/a/ Naab Consulting ("Naab Consulting"), for its Complaint for Damages against McQuade Brennan LLP ("McQuade Brennan"), and Brian McQuade ("Brian"), individually, (collectively, "Defendants"), alleges and states the following:

### NATURE OF ACTION

1.      This action arises directly from Naab Consulting's services to broker the sale or transfer of McQuade Brennan and Brian's deliberate acts to cheat Naab Consulting from receiving the payment it was due. Brian concealed the transaction, depriving Naab Consulting from receiving its 8% consulting fee.

### PARTIES, JURISDICTION, & VENUE

2.      Naab Consulting is an Indiana corporation, with a principal address of 9777 Brook Wood Dr., McCordsville, IN, 46055.

3.      McQuade Brennan was a Washington, D.C. limited liability partnership, with a principal address of 1730 Rhode Island Ave, NW, Suite 800, Washington, D.C., 20036.

4.      Upon information and belief, McQuade Brennan was dissolved by Brian in 2015.

5.      Brian is an individual and partner of McQuade Brennan who, upon information and belief, resides in the State of Maryland.

6.      This Court has jurisdiction of this diversity action under 28 U.S.C. § 1332.

7.      Venue is proper under 28 U.S.C. § 1391(b) and (c). Upon information and belief, Brian resides in the State of Maryland and is subject to this Court's personal jurisdiction.

8.      Upon information and belief, McQuade Brennan did business in Maryland and is subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

9.      Naab Consulting brokers the sale or merger of accounting practices across the country. For over twenty years, Naab Consulting has prided itself on expert service and an excellent record of success connecting buyers and sellers of accounting practices.

10.     In exchange for its services, Naab Consulting receives a performance fee upon the completion of a successful sale or merger it brokered.

11.     On September 23, 2014, Naab Consulting and McQuade Brennan entered into a non-disclosure agreement ("McQuade NDA") to enable the disclosure of information to Naab Consulting in connection with the potential sale or merger of

McQuade Brennan's accounting practice. The McQuade NDA is attached and incorporated hereto as **Exhibit A**.

12.     Naab Consulting and McQuade Brennan entered into a consulting agreement, effective October 9, 2014 ("Consulting Agreement"). The Consulting Agreement is attached and incorporated as **Exhibit B.**

13.     The Consulting Agreement granted Naab Consulting the "EXCLUSIVE RIGHT to sell/merge the accounting practice [] known as McQuade Brennan LLP." [Exh. B, ¶ 1].

14.     Naab Consulting then began the process of finding qualified buyers interested in purchasing or merging with McQuade Brennan.

15.     Larry Naab ("Larry"), the President of Naab Consulting, and Brian, partner of McQuade Brennan, communicated about potential buyers.

16.     Naab Consulting found Ribis, Jones & Maresca ("RJM") to be a potential qualified buyer.

17.     On October 30, 2014, Larry received permission from Brian to initiate communications with David Jones ("Jones"), a partner of RJM, about the potential sale or merger of McQuade Brennan. *See* emails attached and incorporated as **Exhibit C**.

18.     Larry facilitated the flow of information between McQuade Brennan and Jones through numerous emails and telephone calls, and coordinated their initial introduction.

19.     Before their first meeting, Brian had never met with Jones, and did not have any personal relationships with others at RJM.

20.     After Jones expressed interest in the purchase of or merger with McQuade Brennan, Larry scheduled a meeting between Brian and Jones. *See* emails attached and incorporated as **Exhibit D**.

21.     Upon information and belief, Brian and Jones met on November 17, 2014.

22.     On December 10, 2014, Brian and Jones again met in person. Following this meeting, Brian and Jones began sending emails to work out the details of merging McQuade Brennan and RJM.

23.     On December 16, 2014, Larry discovered that Jones made an offer to Brian. Larry requested a copy of the offer from both Brian and Jones.

24.     Larry did not receive a response.

**McQuade Brennan Breached the Consulting Agreement by**
**Merging its Accounting Practice and Failing to Pay the Required Performance Fee**

25.     Under the Consulting Agreement, McQuade Brennan agreed to "refer ALL contacts and/or inquiries regarding the sale of [McQuade Brennan] to Naab Consulting during the listing period." [Exh. B, ¶ 3].

26.     McQuade Brennan also granted Naab Consulting the "EXCLUSIVE RIGHT to sell/merge the accounting practice known as McQuade Brennan LLP," through the Consulting Agreement. [Exh. B, ¶ 1].

27.     McQuade Brennan acknowledged and understood that "Naab Consulting [] [had] the sole and exclusive right to sell or merge [McQuade Brennan]." [Exh. B, ¶ 3].

28.     However, McQuade Brennan and Brian entered into a purchase and sales agreement with RJM on January 15, 2015 ("Purchase Agreement"). *See* the Purchase Agreement attached and incorporated as **Exhibit E**.

29.     Because of the Purchase Agreement, Brian and Jones merged McQuade Brennan and RJM, creating a new entity: Jones, Maresca & McQuade ("JMM").

30.     JMM was issued a license by the District of Columbia Board of Accountancy on April 19, 2016. *See* the proof of license attached and incorporated as **Exhibit F**.

### Defendants Attempt to Conceal the Purchase Agreement from Naab Consulting and Prevent Collection of the Required Performance Fee

31.     Not only was Naab Consulting denied its exclusive right to sell or merge McQuade Brennan, but Defendants failed to notify Naab Consulting that a sale or merger was even contemplated.

32.     Under the Consulting Agreement, "[McQuade Brennan] agree[d] to pay Naab Consulting a performance fee of 8% of the initial Practice purchase price, as described in the purchase agreement, merger agreement or other definitive agreement for the sale or merger of [McQuade Brennan]." [Exh. B, ¶ 2].

33.     McQuade Brennan further agreed "that the performance fee shall be due and payable if [McQuade Brennan], directly or indirectly, enters into a purchase and sale agreement (however designated) or does any act tantamount to a sale or contract to sell or merge the Practice [of McQuade Brennan]." [Exh. B, ¶ 4].

34.     The 8% performance fee was due and payable, on or about January 15, 2015, when Defendants signed the Purchase Agreement.

35.     After learning about the merger, Larry went to Washington, D.C. and met with Brian at his office on August 27, 2015, to discuss the arrangement and payment of the performance fee.

36.     During Larry's meeting with Brian, Brian provided false information to Larry, specifically that McQuade Brennan and RJM merged without any formal agreement between the two entities.

37.     But by the time of their meeting, and unbeknown to Larry, Brian had executed the Purchase Agreement.

38.     On January 4, 2018, Larry sent a letter informing Brian that Naab Consulting became aware of a merger or other transaction between McQuade Brennan and RJM and that Naab Consulting was due its performance fee. The letter is attached and incorporated as **Exhibit G**.

39.     The letter also requested any documentation relating to the merger of McQuade Brennan and RJM. [Exh. G].

40.     Brian never responded to the letter.

41.     On July 26, 2018, counsel for Naab Consulting sent a demand letter notifying Brian the performance fee is still owed to Naab Consulting and requesting a response ("Demand Letter"). The Demand Letter is attached and incorporated as **Exhibit H**.

42.     Brian never responded to the Demand Letter.

6

43.     After the Purchase Agreement was executed, Brian dissolved McQuade Brennan without paying the performance fee to Naab Consulting.

44.     The performance fee was and is an obligation of McQuade Brennan. As an unsecured debt of McQuade Brennan, the performance fee should have been paid before Brian received any profits from the Purchase Agreement.

45.     Naab Consulting was not made aware of the existence of any formal written agreement effectuating the sale or merger of McQuade Brennan and RJM until around May 2019.

<u>COUNT I – BREACH OF CONTRACT</u>
**(MCQUADE BRENNAN)**

46.     Naab Consulting incorporates the preceding paragraphs by reference as if fully restated here.

47.     The Consulting Agreement is a valid, enforceable contract between Naab Consulting and McQuade Brennan.

48.     McQuade Brennan breached the Consulting Agreement by failing to refer all inquiries regarding the sale of McQuade Brennan to Naab Consulting.

49.     McQuade Brennan further breached the Consulting Agreement by failing to pay Naab Consulting a performance fee of 8% of the initial Practice purchase price, as described in the Purchase Agreement.

50.     Naab Consulting has suffered damages as a direct and proximate result of McQuade Brennan's breach of the Consulting Agreement and is entitled to its performance fee, and attorneys' fees for pursuing this matter.

7

**WHEREFORE**, Naab Consulting respectfully requests that the Court enter judgment in its favor and against McQuade Brennan for damages to be determined at trial, attorneys' fees, costs, prejudgment interest, and all other appropriate and just relief in the premises.

### COUNT II – Fraud – Ind. Code § 35-43-5-4(8) (BRIAN)

51.    Naab Consulting incorporates the preceding paragraphs by reference as if fully set forth herein.

52.    When Larry met with Brian on August 27, 2015, about the purchase of or merger with McQuade Brennan, Brian told Larry that there were no documents executed during the transaction.

53.    At the time of this meeting, and unknown to Larry, Brian already executed the Purchase Agreement.

54.    Brian intentionally concealed the Purchase Agreement and the profits he received through the transaction from Naab Consulting.

55.    Brian concealed the Purchase Agreement with the intention of defrauding Naab Consulting and preventing it from receiving its performance fee.

56.    Naab Consulting was damaged by Brian intentionally concealing the Purchase Agreement and profits received with the intention to defraud Naab Consulting.

57.    Naab Consulting did not learn of the existence of the Purchase Agreement until around May 2019.

58.     Under Ind. Code § 34-24-3-1 and § 35-43-5-4(8), Naab Consulting is entitled to recover actual damages, treble damages, costs, reasonable attorneys' fees, and any other relief the Court deems just and proper.

**WHEREFORE**, Naab Consulting, by counsel, respectfully requests judgment in its favor against Brian McQuade, damages to be determined at trial, treble damages, costs, attorneys' fees under the Indiana Crime Victim's Relief Act, Ind. Code § 34-24-3-1, and all other just and proper relief in the premises.

### COUNT III – Conversion – Ind. Code § 35-43-4-3
### (MCQUADE BRENNAN)

59.     Naab Consulting incorporates the preceding paragraphs by reference as if fully set forth herein.

60.     Naab Consulting was entitled to receive an 8% performance fee from the Purchase Agreement signed by McQuade Brennan.

61.     Upon execution of the Purchase Agreement, the performance fee became a determinate sum that McQuade Brennan was entrusted to apply to Naab Consulting for its services.

62.     Naab Consulting's performance fee became Naab Consulting's property on the date McQuade Brennan signed the Purchase Agreement.

63.     McQuade Brennan exerted unauthorized control over Naab Consulting's property when it failed to pay Naab Consulting's performance fee.

64.     By failing to pay Naab Consulting's performance fee, McQuade Brennan converted Naab Consulting's property.

65.     Under Ind. Code § 34-24-3-1 and § 35-43-4-3, Naab Consulting is entitled to recover actual damages, treble damages, costs, reasonable attorneys' fees, and any other relief the Court deems just and proper.

**WHEREFORE**, Naab Consulting, by counsel, respectfully requests judgment in its favor against McQuade Brennan, damages to be determined at trial, treble damages, costs, attorneys' fees under the Indiana Crime Victim's Relief Act, Ind. Code § 34-24-3-1, and all other just and proper relief in the premises.

## COUNT IV – Conversion – Ind. Code § 35-43-4-3
### (BRIAN)

66.     Naab Consulting incorporates the preceding paragraphs by reference as if fully set forth herein.

67.     Naab Consulting was entitled to receive an 8% performance fee from the Purchase Agreement signed by Brian.

68.     Upon execution of the Purchase Agreement, the performance fee became a determinate sum within which Brian, on behalf of McQuade Brennan, was entrusted to apply to Naab Consulting for its services.

69.     Naab Consulting's performance fee became Naab Consulting's property on the date Brian signed the Purchase Agreement.

70.     After executing the Purchase Agreement, Brian dissolved McQuade Brennan.

71.     Both after executing the Purchase Agreement and dissolving McQuade Brennan, Brian received payments from the Purchase Agreement.

72.     At the time Brian dissolved McQuade Brennan, the 8% performance fee was an obligation of McQuade Brennan.

73.     Any proceeds resulting from the Purchase Agreement should have been paid to Naab Consulting prior to Brian receiving any proceeds from the transaction.

74.     Brian had a duty to ensure Naab Consulting was paid its performance fee prior to collecting any profits resulting from the Purchase Agreement.

75.     Brian exerted unauthorized control over Naab Consulting's property by collecting proceeds of the Purchase Agreement before paying Naab Consulting its 8% performance fee.

76.     By collecting proceeds of the sale, Brian converted Naab Consulting's property.

77.     Under Ind. Code § 34-24-3-1 and § 35-43-4-3, Naab Consulting is entitled to recover actual damages, treble damages, costs, reasonable attorneys' fees, and any other relief the Court deems just and proper.

**WHEREFORE**, Naab Consulting, by counsel, respectfully requests judgment in its favor against Brian McQuade, damages to be determined at trial, treble damages, costs, attorneys' fees under the Indiana Crime Victim's Relief Act, Ind. Code § 34-24-3-1, and all other just and proper relief in the premises.

## COUNT V – Fraudulent Misrepresentation
### (BRIAN)

78.     Naab Consulting incorporates the preceding paragraphs by reference as if fully set forth herein.

79.    Brian made false statements to Naab Consulting by stating that there was no formal agreement between McQuade Brennan and RJM that memorialized the financial transaction between the two entities.

80.    The false statements made by Brian were a deliberate attempt to prevent Naab Consulting from receiving the 8% performance fee.

81.    These statements were a material misrepresentation of a past or existing fact.

82.    These statements were false.

83.    The Purchase Agreement was executed by Brian on January 15, 2015.

84.    At the time he made these statements, Brian knew that the statements were false.

85.    Naab Consulting relied upon Brian's false statements in not seeking its 8% performance fee at that time.

86.    Naab Consulting was harmed and suffered damage as a result of Brian's false statements.

**WHEREFORE**, Naab Consulting, by counsel, respectfully requests judgment in its favor against Brian McQuade, damages to be determined at trial and all other just and proper relief in the premises.

## COUNT VI – Fraudulent Concealment
### (BRIAN)

87.    Naab Consulting incorporates the preceding paragraphs by reference as if fully set forth herein.

88.     Under the terms of the Consulting Agreement, Brian has a duty to disclose the existence of the Purchase Agreement to Naab Consulting.

89.     Brian knowingly failed to disclose the existence of the Purchase Agreement to Naab Consulting.

90.     Naab Consulting relied on and was damaged because of Brian's failure to disclose the existence of the Purchase Agreement.

**WHEREFORE**, Naab Consulting, by counsel, respectfully requests judgment in its favor against Brian McQuade, damages to be determined at trial and all other just and proper relief in the premises.

## COUNT VII – Unjust Enrichment
### (BRIAN)

91.     Naab Consulting incorporates the preceding paragraphs by reference as if fully set forth herein.

92.     Naab Consulting provided its brokerage services to Defendants at the request of Brian.

93.     Naab Consulting also facilitated discussion between Jones and Brian about the transaction.

94.     As a direct result of Naab Consulting's efforts, McQuade Brennan was able to merge with RJM.

95.     Brian directly benefited from Naab Consulting's efforts.

96.     By refusing to pay Naab Consulting, Brian has been unjustly enriched to Naab Consulting's detriment.

**WHEREFORE**, Naab Consulting respectfully requests that the Court enter judgment in its favor and against Brian McQuade for damages to be determined at trial, and for all other appropriate relief in the premises.

## COUNT VII – Imposition of a Constructive Trust
### (BRIAN)

97.     Naab Consulting incorporates the preceding paragraphs by reference as if fully set forth herein.

98.     Brian's intentional conduct in concealing the merger transaction and the existence of the Purchase Agreement from Naab Consulting constitutes fraudulent conduct.

99.     By virtue of Brian's fraudulent and deceitful conduct he has wrongfully retained proceeds of the sale of McQuade Brennan that rightfully belong to Naab Consulting.

100.     Under the terms of the Purchase Agreement, Brian received the sum of $1,400,000 in cash upon closing, and the remaining sum of $1,200,000 was to be paid to Brian in 84 monthly installments in the amount of $14,285.78 each. [Exh. E, ¶¶ 2.1.1., 2.1.2.].

101.     Brian will be unjustly enriched if he is permitted to retain the portion of the purchase price that constitutes Naab Consulting's 8% performance fee.

102.     The Court should impose a constructive trust, to prevent unjust enrichment to Brian, and require the future monthly payments Brian receives under the

terms of the Purchase Agreement be placed in the constructive trust in favor of Naab Consulting.

      **WHEREFORE**, Naab Consulting respectfully requests that the Court impose a constructive trust to prevent unjust enrichment to Brian and require the 8% performance fee be placed in the constructive trust in favor on Naab Consulting, and for all other appropriate relief in the premises.

**DEMAND FOR JURY TRIAL**

      Under Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted,

/s/ _____

Timothy F. Maloney (Fed. Bar ID #03381)
Alyse L. Prawde (Fed. Bar ID #14676)
Joseph Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770-1417
Telephone: (240) 553-1206
Facsimile: (240) 553-1737
tmaloney@jgllaw.com
aprawde@jgllaw.com

Manuel Herceg, Atty. No. 29956-06 *(pro hac vice forthcoming)*
Kayla Moody-Grant, Atty. No. 35801-49 *(pro hac vice forthcoming)*
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

mherceg@taftlaw.com
kmoody-grant@taftlaw.com

*Attorneys for Plaintiff Naab Consulting, Inc.*

16